# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

COLIN C.,

      Plaintiff,

      v.

FRANK BISIGNANO,
  COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 25 CV 03064

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Plaintiff Colin C. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse and remand the Commissioner's decision [13] is denied, the Commissioner's motion for summary judgment [14] is granted, and the denial of benefits is affirmed.[1]

## Background

In September 2021, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of April 1, 2020. [11-1] 30. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). [*Id.*] 30, 40. The Appeals Council denied review in January 2025, *see* [*id.*] 1–4, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. [11-1] 32. At step two, the ALJ determined that plaintiff had the following severe impairment: migraine headaches. [*Id.*] 32–34. At step three, the ALJ concluded that plaintiff's impairment did not meet or equal the severity of a listed impairment. [*Id.*] 34. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff: (1) could not

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record, [11-1], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [7].

climb ladders, ropes, or scaffolds; (2) could not work around unprotected heights or unprotected dangerous moving machinery; (3) could occasionally climb ramps and stairs, as well as balance, stoop, kneel, crouch, and crawl; (5) could not experience concentrated exposure to dusts, fumes, gases, poor ventilation or vibrations (from tools or work surfaces); and (6) could not work in an environment with more than moderate noise levels (per DOT description), nor more light/brightness than normal indoor lighting (such as in office, factory, retail setting). [*Id.*] 34–38. At step four, the ALJ held that plaintiff could perform his past relevant work as a security guard and mail carrier supervisor. [*Id.*] 38–39. The ALJ also made an alternative finding for step five and found that jobs existed in significant numbers in the national economy that plaintiff could perform: document preparer (16,000 jobs), circuit board assembler (11,000 jobs), and address clerk (12,000 jobs). [*Id.*] 39. Accordingly, the ALJ concluded that plaintiff was not disabled. [*Id.*] 40.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (citation modified).

## Discussion

Plaintiff argues that the denial of benefits should be reversed due to four separate errors[3] committed by the ALJ: (1) improperly rejecting the opinion of plaintiff's treating neurologist; (2) failing to develop an RFC that accounted for plaintiff's migraine-related symptoms; (3) improperly discounting plaintiff's testimony regarding his subjective symptoms; and (4) failing to support her step four and five findings with substantial evidence. *See* [13] 1. The Court rejects all four arguments.

### A. The ALJ's rejection of the plaintiff's treating neurologist's opinion was not reversible error.

Plaintiff's neurologist, Dr. David Larsen, opined that plaintiff's migraines would interfere with his ability to engage in competitive employment in several ways,

---

[3] Upon review of plaintiff's brief, the Court found that several of the five errors alleged by plaintiff contained overlapping factual allegations and legal arguments. In this opinion, the Court has reorganized these allegations into four unique errors to minimize such overlap and repetition.

including an estimate that plaintiff would need to be absent from work "four or more times per month[.]" [11-1] 565. Plaintiff argues that the ALJ's rejection of this medical opinion, specifically the fact that plaintiff would require multiple absences per month, was in error. [13] 4.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . [plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or administrative finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors" and an ALJ "must explain how she considered" those factors, "but she is not required to articulate how she evaluated the other factors." *Id.* "In considering the supportability and consistency of a medical opinion, an ALJ need only minimally articulate her reasoning for the persuasiveness of the medical opinion." *Lisa L. v. O'Malley*, No. 20-CV-50395, 2024 WL 1013977, at *2 (N.D. Ill. Mar. 8, 2024) (citation modified).

When determining the supportability of a medical opinion, an ALJ is instructed to look to "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* "[F]or an opinion to be consistent, it must be, reductively, consistent with the record." *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *2 (N.D. Ill. Mar. 29, 2024). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ evaluated Dr. Larsen's opinion and explained that she found Dr. Larsen's opinion unpersuasive because:

> Dr. Larsen offered little support for the extreme limitations assessed, other than relaying the claimant's characterization of the severity and daily occurrence of the headaches. He did note a clinical finding of psychomotor retardation on examination, but this finding does not appear in his treatment notes or in those of the claimant's other neurologists (*e.g.*, Ex. 9F, 13F). While Dr. Larsen offered a[] "very guarded to poor" prognosis, his own treatment notes document the claimant's reports of thirty to forty percent improvement with treatment

3

and his own characterization of the claimant's "pretty good results" (Ex. 13F/5). Nothing in Dr. Larsen's treatment notes supports the limitations he assessed and they are inconsistent with the remainder of the record and with the claimant's activity during the period at issue.

[11-1] 37–38.

Plaintiff claims that the ALJ's finding was in error because Dr. Larsen's opinion was both well supported and consistent with the record. [13] 4. Plaintiff first points to treatment notes from Dr. Larsen which "documented repeated migraine symptoms and treatment[.]" [13] 4. But the ALJ did not reject Dr. Larsen's opinion to the extent that it reported the plaintiff had migraines, she rejected Dr. Larsen's opinion regarding the extent of plaintiff's limitations. [11-1] 37–38. In fact, the ALJ found that plaintiff's migraines were a severe impairment. [*Id.*] 32. Plaintiff next claims that "no other medical opinion refuted" Dr. Larsen's opinion. [13] 4. But the consistency of a medical opinion is weighed against the overall record, not just other medical opinions. 20 C.F.R. § 404.1520c(c)(2). And the ALJ discussed several pieces of non-medical record evidence (discussed in this opinion below) to support her finding that plaintiff "is quite functional both mentally and physically despite alleged daily headaches and migraines and the attendant other alleged symptoms." [11-1] 38. Moreover, contrary to plaintiff's claim, the limitations in Dr. Larsen's opinion were contradicted by other medical opinions. The state agency consultants reviewed plaintiff's medical record and did not find that plaintiff needed absences from work. [11-1] 94–96, 104–06. The ALJ analyzed those state agency consultants' opinions, found them persuasive, and relied on them heavily when crafting plaintiff's RFC. [11-1] 37. In summary, plaintiff fails to point to any reversible error regarding the ALJ's finding that Dr. Larsen's opinion was unpersuasive.

For these reasons, the Court rejects plaintiff's first ground for remand.

### B. The ALJ's RFC determination is supported by substantial evidence.

An RFC is the ALJ's description of the maximum type or level of work a plaintiff can do despite his limitations. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). That unique RFC, along with other factors, is then used by a vocational expert to testify regarding what, if any, jobs exist in the national economy that plaintiff could perform. *See e.g.*, *Gail A. v. Kijakazi*, No. 22 CV 7248, 2023 WL 8451697, at *4 (N.D. Ill. Dec. 6, 2023). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [s]he may not ignore entire lines of contrary evidence." *Id.* at 592. "The ALJ must explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Moira L. v.*

4

*Kijakazi*, No. 19 C 2687, 2022 WL 846469, at *2 (N.D. Ill. Mar. 22, 2022) (citation modified).

Plaintiff argues that the ALJ's RFC analysis was flawed in two ways. First, plaintiff confusingly states that the ALJ "failed to include any corresponding limitations [related to plaintiff's migraines] in the RFC." [13] 7. The ALJ may not have explicitly stated that her RFC limitations were designed to address plaintiff's migraines, but migraines are the only impairment discussed in that section of her decision.[4] [11-1] 34–38. A commonsense reading of the RFC section of the opinion is that all of the limitations were crafted due to plaintiff's migraines and "attendant . . . symptoms." [11-1] 38; *Henderson v. Kijakazi*, Case No. 22 C 3890, 2023 WL 6388143, at *3 (N.D. Ill. Sept. 29, 2023) (explaining that the court applies a common-sense reading to the entirety of an ALJ's decision). The ALJ clearly explained that while she found plaintiff's subjective symptoms inconsistent with his level of activity and presentation in clinical settings, she still gave plaintiff "the benefit of the doubt" and incorporated the more restrictive limitations found by the state agency medical consultants. [11-1] 37. To the extent that plaintiff takes issue with the fact that the ALJ did not include other limitations like unscheduled breaks, absences, or time off-tasks, plaintiff needs to point to evidence that the ALJ ignored which supported those limitations. The only evidence that plaintiff points to is the opinion of Dr. Larsen and speculation regarding other ways migraines can impact functioning. [13] 4, 7. The Court has already determined that the ALJ did not commit reversible error in finding Dr. Larsen's opinion unpersuasive and speculation about other possible migraine symptoms is insufficient to show that the ALJ's decision was unsupported by substantial evidence. *Aubrey L. v. O'Malley*, 24 C 7055, 2025 WL 461437, at *6 (N.D. Ill. Feb. 11, 2025) ("Guessing or speculating isn't good enough; it's up to the plaintiff to show how his medically determinable impairments caused any limitations beyond those the ALJ found.").

Second, plaintiff argues that the ALJ's RFC contained an error because she "never explained how she determined Plaintiff could stoop occasionally despite his migraines and other impairments." [13] 7. But the state agency medical consultants opined that plaintiff could occasionally stoop. [11-1] 95, 104. The ALJ found the state agency medical consultants' opinions "generally persuasive" and that they "accommodated the claimant's subjective complaints, such as . . . disturbed balance." [11-1] 37. It is clear to the Court that the ALJ relied on the opinions of the state agency medical consultants to determine plaintiff's stooping ability. And, again, plaintiff fails to point to any record evidence that shows he could not stoop occasionally. [13]; *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged

---

[4] This is also in accordance with the ALJ's opinion regarding severe and non-severe impairments. The only severe impairment the ALJ found was migraine headaches. [11-1] 32. The ALJ also discussed other possible impairments but noted that they either were unsupported by the record or in full remission due to treatment. [11-1] 32–33. Plaintiff does not argue that the ALJ failed to discuss limitations related to any of the non-severe impairments when crafting his RFC. [13].

the evidence so significantly as to warrant reversal. Doing so would essentially put ourselves in the ALJ's shoes to re-weigh the evidence, a role that we try to avoid.").

For these reasons, the Court rejects plaintiff's second ground for remand.

**C. The ALJ's assessment of plaintiff's subjective symptom testimony was not in error.**

When reviewing an ALJ's assessment of plaintiff's symptoms, courts should "not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports it." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (citation modified). If an ALJ gives specific reasons supported by the record, courts should "not overturn a credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The Seventh Circuit has stated that it **"**would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

Plaintiff argues that the ALJ improperly "cherry-picked" treatment notes showing improvement and normal neurological findings when she concluded that plaintiff's testimony was inconsistent with the record evidence. [13] 5–6. But "[a]n ALJ need not address every piece or category of evidence identified by a claimant," *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024), as long as she does not ignore evidence which runs contrary to her conclusions, *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Plaintiff does not specifically identify which contrary evidence the ALJ supposedly ignored. Rather, he just points to hundreds of pages of his treatment notes. [13] 5. Plaintiff's claim that those notes record his consistent complaints regarding "migraines occurring several times per week, with severe symptoms" as well as the fact that he was prescribed migraine-specific medications is irrelevant. [13] 5. The ALJ acknowledged that plaintiff reported severe migraine symptoms and obtained treatment, but she also discussed inconsistencies she found in the treatment notes regarding plaintiff's self-reported symptoms and the clinical examination findings. [11-1] 35–36. Plaintiff does not address the ALJ's reasoning at all. [13] 5–6.

Plaintiff also fails to wrestle with the other primary reason given by the ALJ for rejecting his self-reported symptoms. The ALJ explained that she found plaintiff's activities during the period inconsistent with plaintiff's testimony. [11-1] 36. For example, plaintiff testified that bright light, driving, movement, computer screens, and groups of people trigger his migraines. [*Id.*]; [11-1] 558. And plaintiff testified that migraines take him "out of commission" for the rest of the day as well as the next day. [11-1] 37, 64–65. Yet the ALJ identified several instances contained in the record of plaintiff driving, playing video games on a screen, taking a ten-day European

vacation through four countries, as well as embarking on a Caribbean cruise. [11-1] 36, 76, 79–82, 482, 494.

The ALJ clearly explained how she weighed the evidence to conclude that plaintiff's "level of activity during the period at issue and his presentation in a clinical setting are inconsistent with his allegations." [11-1] 37. Without reweighing the evidence, determining credibility, or substituting the Court's judgment for the ALJ's, there is nothing more the Court can do here.

For these reasons, the Court rejects plaintiff's third ground for remand.

**D.      The ALJ's findings at step four at five do not warrant remand.**

Plaintiff claims that the ALJ erred at step four of her decision because she did not make specific findings regarding whether plaintiff's RFC permitted him to perform past work. [13] 8. The plaintiff relies on *Nolen v. Sullivan*, 939 F.2d 516, (7th Cir. 1991) in making his argument. But in that case, the ALJ only described plaintiff's previous job as "unskilled at the light exertional level" and did not describe the tasks entailed or relate them to the plaintiff's existing limitations. *Id*. at 519 (citation modified). Here, the ALJ reiterated the RFC to the vocational expert ("VE") and asked the VE to testify if plaintiff could perform his prior work. [11-1] 84–85. The VE testified that plaintiff could perform his prior work as a security guard, both as the position is generally performed and as plaintiff actually performed it. [*Id*.] 85. The VE also testified that plaintiff could perform his work as a mail carrier supervisor, but only as generally performed in the economy, not in the way plaintiff actually performed it. [*Id*.] 85. The ALJ "accept[ed] the testimony of the vocational expert in accordance with SSR 00-4p, as it is consistent with the information contained in the Dictionary of Occupational Titles [("DOT")]." [11-1] 39. As such, the ALJ found that plaintiff could perform his past relevant work. [*Id*.] As long as the ALJ performed those steps, "the ALJ was not required to provide a more detailed description of [p]laintiff's past work nor was she required to further elaborate on his alleged limitations in performing the job." *Patrick V. W. v. Saul*, No. 19 C 1297, 2020 WL 7353443, at *6 (N.D. Ill. Dec. 15, 2020) (citation modified). *Cohen v. Astrue*, 258 F. App'x 20, 28 (7th Cir. 2007) ("Here, the ALJ considered the specific jobs Cohen held, so *Nolen* is inapplicable."). Second, and more importantly, the ALJ went onto step five, so even if she committed an error at step four, it would be harmless. *Rodolfo G. v. Kijakazi*, No. 19 CV 3937, 2022 WL 507589, at *11 (N.D. Ill. Feb. 18, 2022) (collecting cases explaining that a valid step five finding negates any error at step four).

Plaintiff also complains that the ALJ erred at step five. However, plaintiff's arguments here are underdeveloped and unsupported.[5] Plaintiff argues that the jobs

---

[5] The majority of plaintiff's argument in this section of his brief is actually that the ALJ improperly assigned plaintiff an RFC, [13] 9–10, but the Court has already determined the ALJ did not err when fashioning plaintiff's RFC. The Court also notes that plaintiff did not file a reply brief.

identified in step five might actually not be performable by someone with plaintiff's RFC. [13] 10–11. In support of this argument, plaintiff cites *Overman v. Astrue*, 546 F.3d 456, (7th Cir. 2008). In *Overman*, the Seventh Circuit remanded an ALJ's decision because: (1) the VE's testimony conflicted so obviously with the descriptions of the positions in the DOT that the ALJ had an obligation to obtain an explanation for the conflict despite plaintiff not raising the issue during the hearing; and (2) the ALJ relied on VE testimony that was shown to be unreliable. *Id.* at 462–64. But the plaintiff does not argue that the VE testimony was unreliable or conflicted with the position descriptions in the DOT. [13] 10–11. Plaintiff does not even cite the position descriptions in the DOT, he just speculates regarding the work those jobs might require. [*Id.*]. As such the Court finds this argument waived. *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020).

For these reasons, the Court rejects plaintiff's fourth ground for remand.

## Conclusion

Plaintiff's motion to reverse and remand [13] is denied, the Commissioner's motion for summary judgment [14] is granted, and the denial of benefits is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 30, 2025**

8